**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone; (619) 272-7014
Facsimile:  (619) 330-1819
E-Mail: rnathan@nathanlawpractice.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq. *(pro hac vice)*
Joseph Lipari, Esq. *(pro hac vice)*
Adam Gonnelli, Esq. *(pro hac vice)*
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
sultzerj@thesultzerlawgroup.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MEYERS, on behalf of herself and all others similarly situated,<br><br><br>Plaintiff,<br><br><br>v.<br><br><br>STEARN'S PRODUCTS, INC.<br><br><br>Defendant. | Case No.  **'18 CV0557 DMS NLS**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jennifer Meyers (collectively, "Plaintiff") bring this action on behalf of herself and all others similarly situated against Stearn's Products, Inc. (otherwise referred to as "Defendant"). Plaintiff make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1.    This is a class action lawsuit against Defendant for selling its DERMA·E® brand facial personal care products as "natural" when, in fact, they contain unnatural or synthetic ingredients.

2.    Stearn's Products, Inc. is an American company that focuses on personal care products. Defendant is headquartered in Los Angeles, California and regards itself as a "we've grown to become one of the largest natural facial care brands in the U.S."   Defendant's DERMA·E® brand was created in1984 and claims it was "we harness nature's most effective ingredients. Our products are formulated with the most potent natural antioxidants and targeted vitamin solutions to ensure they deliver unmatched results without the use of harmful chemicals."  Consistent with Defendant's self-promotion of the DERMA·E® brand as a leader in natural cosmetics, it claims "[o]ver the years we've introduced many extraordinary products, each one rooted in our belief that skin health can be visibly improved through the right combination of potent vitamins, wholesome nutrients and exceptional ingredients."

3.    Defendant's DERMA·E® brand created and continues to maintain an "Our Ingredient Story", which is displayed prominently on its website to further promote and advertise its product line.  The DERMA·E® Ingredient Story states: "Our passion is all about harnessing nature's most effective ingredients. We combine potent natural antioxidants, vitamins and botanicals with our doctor formulated expertise to ensure our products deliver unmatched results and provide our consumers with the best skin care possible. Everything we do considers people…"

- Among other purportedly "natural" products, Defendant manufactures, distributes, advertises and sells DERMA·E® products, which include:

  - Derma e Deep Wrinkle Peptide Moisturizer

---

- Derma e Deep Wrinkle Peptide Serum
- Derma e BB Crème, Light Tint, SPF 25
- Derma e BB Crème, Medium Tint, SPF 25
- Derma e Age-Defying Antioxidant Day Crème
- Derma e Age-Defying Antioxidant Night Crème
- Derma e Microdermabrasion Scrub
- Derma e Deep Wrinkle Peptide Eye Crème
- Derma e Soothing Redness Reducing Serum
- Derma e Soothing Oil-Free Moisturizer with Pycnogenol
- Derma e Soothing Moisturizing Crème with Pycnogenol
- Derma e Evenly Radiant Brightening Serum
- Derma e Evenly Radiant Brightening Day Crème SPF 15
- Derma e Evenly Radiant Brightening Night Crème
- Derma e Evenly Radiant Dark Circle Eye Crème
- Derma e Purifying Youth Serum
- Derma e Purifying Oil-Free Moisturizer
- Derma e Hydrating Mask with Hyaluronic Acid
- Derma e Hydrating Serum with Hyaluronic Acid
- Derma e Hydrating Day Crème and Hyaluronic Acid
- Derma e Hydrating Night Crème with Hyaluronic Acid
- Derma e Clear Vein Crème
- Derma e Skin Lighten
- Derma e Firming DMAE Eye Lift

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

- Derma e Age-Defying Antioxidant Moisturizer SPF 15

- Derma e Age-Defying Antioxidant Eye Crème

- Derma e Firming DMAE Serum

- Derma e Firming DMAE Moisturizer

- Derma e Skinbiotics Treatment Crème

- Derma e Anti-Wrinkle Vitamin A & Green Tea Advanced Crème

- Derma e Soothing Eye Gel with Pycnogenol

- Derma e Hydrating Eye Crème with Hyaluronic Acid

- Derma e Scar Gel

- Derma e Psorzema Crème

- Derma e Stretch Mark Crème

- Derma e CoQ10 Super Repair Serum

- Derma e CoQ10 Super Repair Crème

- Derma e CoQ10 Super Repair Eye Crème

- Derma e Antioxidant Natural Sunscreen SPF 30 Oil-Free Face Lotion

- Derma e Antioxidant Natural Sunscreen SPF 30 Body Lotion

- Derma e Very Clear Moisturizer

- Derma e Intensive Therapy Foot Crème

- Derma e Purifying 2-in-1 Charcoal Mask

- Derma e Anti-Wrinkle Vitamin A Night Serum

- Derma e Anti-Wrinkle Vitamin A Glycolic Mask

- Derma e Overnight Peel

- Derma e Soothing Cleanser with Pycnogenol

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Derma e Soothing Toner with Pycnogenol

- Derma e Very Clear Acne Cleanser

- Derma e Purifying Gel Cleanser

- Derma e Purifying Toner Mist

- Derma e Purifying Daily Detox Scrub

- Derma e Hydrating Scrub

- Derma e Hydrating Cleanser with Hyaluronic Acid

- Derma e Evenly Radiant Brightening Cleanser

- Derma e Evenly Radiant Brightening Toner

- Derma e Firming DMAE Cleanser

- Derma e Firming DMAE Toner

- Derma e Vitamin E Intensive Therapy Body Balm

- Derma e Vitamin E 12,000 IU Crème

- Derma e Tea Tree and E Oil

- Derma e Tea Tree and E Antiseptic Crème

- Derma e Tea Tree and E Face and Body Wash

- Derma e Itch Relief Lotion

- Derma e Anti-Wrinkle Vitamin A Eye Crème

- Derma e Anti-Wrinkle Vitamin A Retinyl Palmitate Crème

- Derma e Anti-Wrinkle Vitamin A Moisturizing Gel

- Derma e Very Clear Acne Scrub

- Derma e Exfoliating Scrub with Fruit Enzymes

- Derma e Anti-Wrinkle Vitamin A Glycolic Cleanser

- Derma e Anti-Wrinkle Vitamin A Glycolic Toner

- Derma e Anti-Wrinkle Vitamin A Glycolic Scrub

- Derma e Hydrating Mist with Hyaluronic Acid

- Derma e Vitamin E Intensive Therapy Body Lotion, Fragrance-Free

- Derma e Vitamin E Intensive Therapy Body Lotion, Lavender-Neroli

- Derma e CoQ10 Super Repair Cleanser

- Derma e CoQ10 Super Repair 2-in-1 Scrub/Mask

- Derma e Anti-Wrinkle Vitamin A & E Treatment Oil

- Derma e Makeup Remover

- Derma e Psorzema Body Wash

- Derma e Scalp Relief Shampoo

- Derma e Scalp Relief Conditioner

- Derma e Very Clear Acne Spot Treatment

- Derma e Vitamin E Skin Oil 14,000 I.U.

- Derma e Age-Defying Antioxidant Hand Crème

- Derma e Hydrating Facial Wipes

- Derma e Vitamin E Intensive Therapy Hand Crème

  (collectively, "the Products").

4.     Consistent with Defendant's self-promotion as a leader in natural personal care products, the front packaging of each one of the Products clearly states that it is "Natural".

5.     To reinforce the message that the Products are natural products, the front packaging of every Product displays pictures of leaves and states the Products are "100% Vegan", "Cruelty-Free", "Paraben-Free."  Contrary to the labeling, the Products contain the following synthetic ingredients:

- Cetyl Alcohol
- Glyceryl Stearate
- Tocopheryl Acetate
- Polysorbate 20
- Xanthan Gum
- Dimethicone
- Phenoxyethanol
- Ethylexylglycerin
- Potassium Sorbate
- Zinc Oxide
- Titanium Dioxide
- Glyceryl Stearate Citrate
- Glyceryl Stearate
- Stearyl Alcohol
- Cetearyl Alcohol
- Decyl Glucoside
- Coco-Glucoside
- Cocamidopropyl Betaine
- Sodium Benzoate
- Citric Acid
- Glycolic Acid

6.     Defendant's representations that the Products are "Natural" are false, misleading, and deceptive because the Products contain multiple ingredients that are, as set forth and described below, synthetic and artificial.

a.  **Zinc Oxide** is a synthetic compound.  *See, e.g.*, 7 C.F.R. § 205.601(j)(6)(ii).  Zinc oxide used in commercial purposes is usually produced by chemical synthesis or by vaporizing metallic zinc at extreme high heat.

b.  **Dimethicone** is a synthetic ingredient listed under 21 C.F.R. § 347.10. It is a polydimethylsiloxane obtained by hydrolysis and polycondensation of dichlorodimethylsilane and chlorotrimethylsilane. [1]

---

[1] https://www.truthinadvertising.org/wp-content/uploads/2014/07/Segedie-v.-Hain-Celestial-Group-complaint.pdf

**c. Cetearyl Alcohol/Cetyl Alcohol/Stearyl Alcohol** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515.

**d. Potassium Sorbate** is a synthetic preservative.[2]  *See* 21 C.F.R. § 582.3640.  It is created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H8O2). The resulting potassium sorbate may be crystallized from aqueous ethanol.  Studies have shown Potassium Sorbate to have genotoxic effects on humans and other mammals.[3]  It causes chromosomal aberrations in cells, which can trigger the development of cancer.[4]

**e. Sodium benzoate** is a synthetic preservative.[5]  Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases.  The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated.  It does not occur naturally.[6]  Sodium benzoate has been shown to cause DNA damage and chromosomal aberrations.[7]  When sodium benzoate combines with ascorbic acid (an ingredient common in many food products) the two substances can react to produce benzene, which is a highly toxic carcinogen.

**f. Xanthan Gum** is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol.  It is

---

[2] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[3] Sevcan Mamur et al., *Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?*, TOXICOLOGY IN VITRO 790, 793 (2010).
[4] *Id.*
[5] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/; http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[6] 21 C.F.R. § 184.1733.
[7] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages and as emulsifiers in salad dressings. *See* 7 C.F.R. § 205.605(b).  A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[8]

g.  **Glyceryl Stearate** is a synthetic mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, and glyceryl esters of fatty acids present in commercial stearic acid.  Glyceryl monostearate is prepared by glycerolysis of certain fats or oils esterification, with glycerin, of stearic acid. *See* 21 C.F.R. §184.1324.

h.  **Glyceryl Stearate Citrate,** is a synthetic mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, citric acid esters and glyceryl esters of fatty acids present in commercial stearic acid.  Glyceryl monostearate is prepared by glycerolysis of certain fats or oils esterification, with glycerin, of stearic acid. *See* 21 C.F.R. §184.1324.

i.  **Cocamidopropyl Betaine (Coco Betaine)** is a synthetic surfactant. [9]

j.  **Glycolic Acid** is a synthetic ingredient registered as a disinfecting cleaner and a disinfectant/sanitizer for non-food contacting, hard non-porous surfaces in residential and public access premises. [10]

k.  **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent. *See* 21 C.F.R. § 178.3400.

---

[8] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan Gum-Containing Thickening Agent*, 161 THE JOURNAL OF PEDIATRICS 2, 354 (2012).
[9]http://www.fda.gov/downloads/CombinationProducts/JurisdictionalInformation/RFDJurisdictionalDecisions/Redacted DecisionLetters/UCM113805.pdf
[10] file:///C:/Users/User/Downloads/EPA-HQ-OPP-2011-0422-0002.pdf

**l.  Phenoxyethanol** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515. [11]

**m.  Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose. [12]

**n.  Coco Glucoside** is a synthetic ingredient obtained by the condensation of glucose and coconut alcohol. [13]

**o.  Tocopherol (Acetate)** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

**p.  Titanium Dioxide** is a color additive that is synthetically prepared Ti02, free from admixture with other substances. [14]

**q.  Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*. A technical evaluation report for the substance citric acid compiled by the United States Department of Agriculture, Agricultural Marketing Service ("USDA AMS") for the National Organic Program classified citric acid as "Synthetic Allowed". *See* Page 4, *available*

at http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5067876. As one of the USDA AMS reviewers commented,

---

[11] The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints against companies that have used these ingredients in products promoted as natural. **Attachment A**
[12] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf
[13] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf
[14] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=73.575

"[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic." *Id.* at 3.

The report further explains, under the "How Made" question, that citric acid is made –

"Traditionally by extraction from citrus juice, no longer commercially available. It is now extracted by fermentation of a carbohydrate substrate (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a    yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid." *Id.* at 4.

   **r.**  **Ethylhexylglycerin** is a synthetic derived from vegetable glycerin. (See below).

   **s.**  **Glycerin (Vegetable)** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[15] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in |

---

[15] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

|  | the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |
|---|---|

9.  Whether Defendant's labeling of the Products as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

10.  Congress has defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . . 7 U.S.C. § 6502 (2.1).

11.  Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients. By way of example, according to a consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[16]

12.  Additionally, Webster's New World Dictionary defines natural as "produced or existing in nature, not artificial or manufactured.[17]

13.  A reasonable consumer's understanding of the term "Natural" comports with that of federal regulators and common meaning.  That is, the reasonable consumer understands the

---

[16] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf (also accessible as Comment 58 at http://www.ftc.gov/policy/public-comments/initiative-353).

[17] http://www.yourdictionary.com/natural#websters.

representation that a product is "Natural" to mean that it does not contain any synthetic or artificial ingredients.

14.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

15.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

16.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products are "Natural".

17.     In April 2016, the Federal Trade Commission ("FTC") filed a complaint against a cosmetics manufacturer for representing that its products were "natural" when they contained ethylhexylglycerin.  The company agreed to cease marketing the products in question as being "natural."[18]

18.     Plaintiff and members of the classes described below paid a premium for Defendant's Products over comparable products that did not purport to be natural products.  Contrary to representations on the Products' labeling, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

---

[18] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited March 21, 2017).

19.     Defendant's representation that the Products are "natural" is unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, and continues to this day.  As such, Defendant's practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL").  Plaintiff also brings claims for fraud, unjust enrichment and breach of express warranty.

## JURISDICTION AND VENUE

20.     This Court has personal jurisdiction over Defendant.  Defendant purposefully avails itself of the California consumer market and distributes the Products to hundreds of locations within this County and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every day.

21.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

22.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

23.     Plaintiff Jennifer Meyers ("Meyers") is a citizen of California, residing in Carlsbad, California.  In the last several years, Ms. Meyers made several purchases of Defendant's Products

from various stores in and near San Diego County, California.  Prior to purchasing DERMA·E®

Products, Ms. Meyers saw and read the front of the product packaging, and relied on the

representation and warranty that the product would "natural."  Prior to purchasing, Ms. Meyers

also saw, read and relied on the representation and warranty that the product was "Natural." Ms.

Meyers understood these representations to mean that DERMA·E® Products did not contain

synthetic chemicals.  Ms. Meyers purchased DERMA·E® Products at a substantial price premium,

and would not have bought the product had she known that the labeling she relied on was false,

misleading, deceptive and unfair.  Ms. Meyers would purchase the Products again in the future if

Defendant changed the composition of the Products so that they conformed to their "natural"

labeling and marketing.

24.     Defendant Stearn's Products, Inc. is a California Corporation that has its principal

place of business at 1180 Patricia Avenue, Suite 200, California 93065.

25.     Defendant produces, markets and distributes various consumer skin care products in

retail stores across the United States.  Defendant knew that the labeling of the Products is false and

misleading to a reasonable consumer, because the Products contain phenoxyethanol and

ethylhexylglycerin and other synthetic ingredients, which are inconsistent with the Product

labeling.

## FACTS COMMON TO ALL CAUSES OF ACTION

26.     Consumers have become increasingly concerned about the effects of synthetics and

chemical ingredients in cosmetic products.  As a result, consumers are willing to pay, and have

paid, a premium for products labeled "natural" over ordinary products that contain synthetic

ingredients.

27.     The FTC has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they
> can substantiate whatever claims they are conveying to reasonable
> consumers.  If reasonable consumers could interpret a natural claim

as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[19]

28.     Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[20]

29.     The DERMA·E® brand is manufactured and marketed by Defendant and sold in drug, grocery, and retail stores nationwide.  On its website, Defendant underscores the fact that "[o]ne of our goals as an all-natural skin care company is to use only the best ingredients in our products."

30.     DERMA·E® brand products that are the subject of this lawsuit include: Natural Mineral Sunscreen Broad Spectrum SPF 30 Body; Natural Mineral Sunscreen Broad Spectrum SPF Oil Face Free; Itch Relief Lotion; Vitamin E Intense Therapy Hand Crème; Stretch Mark Crème; Vitamin E Intense Therapy Body Lotion Lavender-Neroli; Psorzema® Body Wash; Psorzema® Crème; Intense Therapy Foot Crème; Vitamin E 12,000 IV Crème; Vitamin E Intense Therapy Body Lotion Fragrance-Free; Soothing Cleanser with Pycnogenol®; Soothing Eye Gel with Pycnogenol®; Soothing Moisturizing Crème; Soothing Oil-Free Moisturizer;Derma E Baby Natural Mineral Sunscreen; Very Clear Moisturizer;CoQ10 Super Repair Crème; Skinbiotics Treatment Crème; Tea Tree and E Face and Body Wash; CoQ10 Super Repair Eye Crème; Very clear acne spot treatment;  Make Up Remover;  Firming DMAE Cleanser;  Very Clear Acne Scrub; Vitamin E Intense Therapy Body Lotion Fragrance Free; Anti-Wrinkle Vitamin A Palmitate Crème; Anti-Wrinkle Vitamin A Glycolic Cleanser; Tea Tree and Antiseptic Crème; Hydrating Eye Crème; Microdermabrasion Scrub with Sea Salt; Purifying Gel Cleanser; Soothing Toner; Deep Wrinkle Peptide Eye Crème; Clear Vein Crème; Overnight Peel; Hydrating Night Crème (collectively, "Products").

---

[19] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[20] FDA, Small Business & Homemade Cosmetics:  Fact Sheet, *available at* http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

31. The front label of every one of the DERMA·E® Products state prominently in lettering the words "Natural" in addition to the language, "100% Vegan", "Cruelty-Free", "Paraben-Free."

32. All of the DERMA·E® brand Products are labeled with the phrase "Natural."

a) Natural Mineral Sunscreen Broad Spectrum SPF 30 Body:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b) Vitamin E Intense Therapy Hand Crème



c) Psorzema® Body Wash:



33.     DERMA·E® Products have been labeled "Natural" at all times during the last four years, at least.

34.     Based on the language that appears on the front of each product, Plaintiff reasonably believed that DERMA·E® Products contained only natural ingredients.

35.     The phrase "Natural" is a representation to a reasonable consumer that DERMA·E® brand Products contain only natural ingredients.  The phrase is misleading to a reasonable consumer because DERMA·E® brand Products actually contain unnatural and synthetic ingredients.

36.     Based on the language that appears on the front of each product, Plaintiff Meyers believed that DERMA·E® brand Products contained only natural ingredients.

37.     Defendant knew that consumers will pay more for a product labeled "natural," and intended to deceive Plaintiff and putative class members by labeling DERMA·E® brand Products as purportedly natural products.

## CLASS ALLEGATIONS

38.     Plaintiff Meyers seeks to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class").  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

39.     Plaintiff Meyers also seek to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass").  Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

40.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

a.      whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.      whether Defendant's conduct was unfair and/or deceptive;

c.      whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the classes;

d.      whether Defendant breached express warranties to Plaintiff and the classes;

e.      whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

41.      Plaintiff's claims are typical of those of other class members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the natural representations and Plaintiff sustained damages from Defendant's wrongful conduct.

42.      Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the classes.

43.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

44.      The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

45.      The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another

might not.  Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I
### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

46.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47.     Plaintiff Meyers brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

48.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

49.     Plaintiff Meyers and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

50.     Plaintiff Meyers, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

51.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

52.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Meyers and the other members of the California Subclass that the Products are "natural" when in fact they are made with synthetic ingredients.

53.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

54.     On May 30, 2017 (and an amended notice on October 27, 2017), Plaintiff Meyers mailed a notice letter to Defendant consistent with California Civil Code § 1782(a), and Defendant

received the initial notice letter on June 13, 2017. The letter was sent on behalf of Meyers and all other persons similarly situated.

55.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Meyers, on behalf of themselves and all other members of the California Subclass, seeks injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II
### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

56.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.    Plaintiff Meyers brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

58.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

59.    Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

60.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

61.    Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "natural" when, in fact, they are made with synthetic ingredients.

62.    Plaintiff Meyers and the California Subclass lost money or property as a result of Defendant's UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients

1   (b) they paid a substantial price premium compared to other skin care and hygiene products due to

2   Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or

3   benefits as promised.

### COUNT III
**Violation Of California's False Advertising Law ("FAL"),
California Business & Professions Code §§ 17500, *et seq.***

6   63.    Plaintiff hereby incorporates by reference the allegations contained in all preceding

7   paragraphs of this complaint.

8   64.    Plaintiff Meyers brings this claim individually and on behalf of the members of the

9   proposed California Subclass against Defendant.

10   65.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*,

11   makes it "unlawful for any person to make or disseminate or cause to be made or disseminated

12   before the public in this state, ... in any advertising device ... or in any other manner or means

13   whatever, including over the Internet, any statement, concerning ... personal property or services,

14   professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

15   which is known, or which by the exercise of reasonable care should be known, to be untrue or

16   misleading."

17   66.    Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by

18   misrepresenting that the Products are "natural" when they are not.

19   67.    Defendant knew or should have known through the exercise of reasonable care that

20   their representations about the Products were untrue and misleading.

21   68.    Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such

22   that the general public is and was likely to be deceived.  Plaintiff Meyers and the California

23   Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would

24   not have purchased the Products on the same terms if they knew that the Products were made with

25   unnatural and synthetic ingredients; (b) they paid a substantial price premium compared to other

26   skin care and hygiene products due to Defendant's misrepresentations; and (c) the Products do not

27   have the characteristics, uses, or benefits as promised.

28

## COUNT IV
### Breach of Express Warranty

69.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff brings this claim individually and on behalf of the proposed Class, California Subclass against Defendant.

71.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products are "natural."

72.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

73.     The Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic.

74.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

75.     On May 30, 2017, Plaintiff Meyers mailed a notice letter to Defendant consistent with Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A), and Defendant received the letter on June 16, 2017.   The letter was sent on behalf of Meyers and all other persons similarly situated.

## COUNT V
### Unjust Enrichment

76.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

77.     Plaintiff brings this claim individually and on behalf of the proposed Class, California Subclass against Defendant.

78.     Plaintiff and class members conferred benefits on Defendant by purchasing the Products.

79.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff' and class members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products if the true facts had been known.

80.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

## COUNT VI
**Fraud**

81.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

82.     Plaintiff brings this claim individually and on behalf of the proposed Class, California Subclass against Defendant.

83.     As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information about the Products by representing that they are "natural." Defendant made that misrepresentation knowing it was false.

84.     Defendant's misrepresentations, upon which Plaintiff and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and class members to purchase the Products.

85.     Defendant's fraudulent actions harmed Plaintiff and class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand judgment on behalf of themselves and members of the Class, California Subclass as follows:

A.    For an order certifying the nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Subclass representatives; and naming Plaintiff' attorneys as Class Counsel representing the Class and Subclass members;

B.    For an order finding in favor of Plaintiff, the nationwide Class and the California Subclass on all counts asserted herein;

C.    For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.    For injunctive relief enjoining the illegal acts detailed herein;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For an order awarding Plaintiff her reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 16, 2018            **NATHAN & ASSOCIATES, APC**

By:      */s/ Reuben D. Nathan*
          Reuben D. Nathan

Reuben D. Nathan
(State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone: (619)272-7014
Facsimile:  (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq. *(pro hac vice)*
Joseph Lipari, Esq. *(pro hac vice)*
Adam Gonnelli, Esq. *(pro hac vice)*
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
sultzerj@thesultzerlawgroup.com

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED